Kalvin Loppnow, Plaintiff-Appellant,

United Healthcare Insurance Company,
Involuntary-Plaintiff,

v.

Steven Bielik, Defendant-Respondent,†

James R. Swan, Paul R. Kittel, Adler Lentz,
Benjamin P. Feutz, Stephen K. Musto, ABC
Insurance Company, DEF Insurance Company,
GHI Insurance Company, JKL Insurance
Company, MNO Insurance Company and PQR
Insurance Company, Defendants.

Court of Appeals

*No. 2009AP747. Submitted on briefs January 14, 2010.
—Decided April 7, 2010.*

2010 WI App 66

(Also reported in 783 N.W.2d 450.)

† Petition for Review denied w/ $50 costs on 7/21/10.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Howard S. Sicula* and *Thomas W. Kyle* of *Pitman, Kyle & Sicula, S.C.*, Milwaukee.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Lance S. Grady* and *Daniel K. Miller* of *Grady, Hayes & Neary, LLC*, Waukesha.

Before Brown, C.J., Neubauer, P.J., and Snyder J.

¶ 1. NEUBAUER, P.J. Kalvin Loppnow appeals from a summary judgment in favor of Steven Bielik. The trial court found that Loppnow failed to exercise reasonable diligence pursuant to WIS. STAT. § 801.11(1)(c) (2007–08)[1] in his attempts to serve process on Bielik in the state of Florida. The trial court ordered Loppnow's action against Bielik dismissed with prejudice. We conclude that the trial court erred in its determination. The undisputed facts of record on summary judgment demonstrate that Loppnow exercised

---

[1] All references to the Wisconsin Statutes are to the 2007–08 version unless otherwise noted.

reasonable diligence in attempting to serve Bielik. We reverse the trial court's order and remand for further proceedings.

## BACKGROUND

¶ 2. This civil action stems from a physical altercation between Loppnow, Bielik, and several other individuals, during which Loppnow sustained serious injuries. As a result of the altercation, Bielik pled to an amended charge of misdemeanor battery and was sentenced on June 16, 2008. Loppnow's first attempt at the service of process on Bielik in this civil action, filed on June 13, 2008, occurred at the Waukesha County Courthouse just prior to Bielik's sentencing on June 16. The process server's signed affidavit of service states that "on June 16, 2008, . . . Steven Bielik was served a Summons and Complaint . . . by then and there leaving an Authenticated Copy . . . with Attorney Craig W. Albee, who informed me that he was authorized to accept service for Steven Bielik." However, on July 23, 2008, Bielik's attorney in the civil matter, Lance Grady, answered the complaint, alleging insufficiency of service, and denying Bielik's residence at his Oconomowoc, Wisconsin address.[2]

¶ 3. On July 25, 2008, Loppnow's counsel, Thomas Kyle, sent a letter to Grady requesting that he withdraw his affirmative defense based on insufficiency of service. Noting that Grady had previously told him that Bielik "now lives in Florida," Kyle also requested information as to Bielik's new address there. Kyle averred that he also

---

[2] In ruling on summary judgment, the trial court found that the service of process at the courthouse on June 16, 2008, was not valid. Loppnow does not challenge the trial court's ruling on appeal.

806

called Grady and Grady advised that he would get back to Kyle with the information, but "never did." Kyle thereafter attempted to contact Grady "numerous times" regarding Bielik's address before finally getting a hold of him, at which time Grady again advised Kyle that he would inquire about a new address for Bielik and "get back to [him]"; however, he "never did."

¶ 4. On August 14, 2008, Kyle sent a letter to Grady to "memorialize the conversations [they] had over the past few weeks," and to confirm that Grady did not have any luck obtaining an address for Bielik. Kyle noted Bielik's testimony at the June 16 sentencing that he would "be attending University of Central Florida in Orlando" and asserted that it was "axiomatic that [Bielik] must have procured a residence considering that school will start in the next two weeks." In an effort to obtain Bielik's address from Bielik's parents, Kyle subpoenaed them to be deposed on August 20, 2008. However, on August 29, 2008, Grady responded and objected based on lack of timeliness of the notice.

¶ 5. After failing to procure Bielik's address through his attorney, Kyle searched Accurint,[3] which indicated an address for Bielik at 1144 Bulevar De Palmas in Marathon, Florida, verified from July 2006 through August 2008. Kyle also searched Bielik's criminal record and copied portions of the file, including a letter from Grady requesting leniency in sentencing for Bielik based on Grady's personal friendship with the Bielik family, whom he has known since high school. Also included were several letters from friends from

---

[3] Accurint is a "locate-and-research tool" provided by Lexis-Nexis®. The trial court described it as "a search device to locate individuals," noting that "[i]t's used frequently and cited in reasonable diligence affidavits."

Marathon, Florida, who knew Bielik. Six or seven unsuccessful attempts of service were then made to the Bulevar De Palmas address in Marathon, Florida, between August 22 and August 31, 2008.

¶ 6. On August 26, 2008, Kyle hired Jaclyn Kelley of J. Mike Kelley Investigative Services, Inc., in Orlando, Florida, and, after conducting local, statewide, and national database searches, she provided Kyle with two addresses in Lutz, Florida, where Bielik might live. Kelley's "Affidavit of Diligent Search" lists an inquiry to the United States Postal Service and over twenty database searches including telephone records, utility records (including water, sewer, cable television and electric companies), Florida vehicle registration, Florida property records, tax assessors and collectors, Florida Highway Patrol and Florida Department of Law Enforcement, Nationwide vehicle registrations and driver's license database. The agency additionally contacted the University of Central Florida Office of the Registrar in Orlando,[4] which "was unwilling to provide any information due to Student Rights to Privacy (FERPA)." Unsuccessful attempts at service were then made at the Lutz, Florida addresses.

¶ 7. On September 3, 2008, Kyle hired Hungerford Investigative Services which provided him with a "current address" for Bielik in Marathon, Florida at 1144 Bulevar De Palmas. The report, which included Bielik's date of birth and social security number, was dated September 9, 2008, and notes that the address is believed to be that of Bielik's parents and that Steven's residency had yet to be confirmed. On September 3, Kyle mailed a

---

[4] While the Kelley affidavit does not indicate the location of the University of Central Florida Office of the Registrar, the phone number provided in the affidavit has an Orlando area code.

copy of the summons and complaint to the Marathon, Florida address. On September 4, 2008, Kyle searched the National Student Clearinghouse which provided the Marathon, Florida address for Bielik, and identified him as a full-time student at University of Central Florida with a "term start" date of August 25, 2008, and a "term end" date of December 13, 2008. The report did not specify a campus location. On September 6, 13, and 20, 2008, Kyle published a summons in the Key West Citizen newspaper in Marathon, Florida.

¶ 8. On November 5, 2008, Bielik filed a motion for summary judgment on grounds that the court lacked personal jurisdiction due to "insufficiencies in the service of process." Bielik's motion alleged that Loppnow had failed to comply with the standard of reasonable diligence prior to service by publication. The trial court agreed, granting summary judgment to Bielik and dismissing Loppnow's action against him. Loppnow appeals.

## DISCUSSION

■

¶ 9. In reviewing a trial court's decision on a motion for summary judgment, we apply the standards set forth in Wis. Stat. § 802.08(2) in the same manner as the trial court. *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315, 401 N.W.2d 816 (1987). Summary judgment is properly granted where no material issue of fact exists and only a question of law is at issue. *Id.* Here the facts are not in dispute. The issue is whether Loppnow was reasonably diligent in serving Bielik, pursuant to Wis. Stat. § 801.11. Where, as here, the underlying facts regarding diligence in service of pro-

cess are undisputed, the legal significance of such attempts is a question of law to be addressed independently by the reviewing court. *See Welty v. Heggy*, 124 Wis. 2d 318, 324, 369 N.W.2d 763 (Ct. App. 1985).

¶ 10. Constitutional requirements of due process require that a court have personal jurisdiction over a defendant in order to render a judgment in a civil suit. *Haselow v. Gauthier*, 212 Wis. 2d 580, 586, 569 N.W.2d 97 (Ct. App. 1997). Fundamental to that due process requirement is the provision of notice "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* WISCONSIN STAT. § 801.11 governs personal jurisdiction and the service of process in Wisconsin.[5] It requires that personal service under § 801.11 be attempted with "reasonable diligence" before an alternative method of

---

[5] WISCONSIN STAT. § 801.11 provides in relevant part:

A court of this state having jurisdiction of the subject matter and grounds for personal jurisdiction as provided in s. 801.05 may exercise personal jurisdiction over a defendant by service of a summons as follows:

(1) NATURAL PERSON. Except as provided in sub. (2) upon a natural person:

(a) By personally serving the summons upon the defendant either within or without this state.

(b) If with reasonable diligence the defendant cannot be served under par. (a), then by leaving a copy of the summons at the defendant's usual place of abode:

1. In the presence of some competent member of the family at least 14 years of age, who shall be informed of the contents thereof;

1m. In the presence of a competent adult, currently residing in the abode of the defendant, who shall be informed of the contents of the summons; or

810

service is employed. "Reasonable diligence" has been described by this court as follows:

> The diligence to be pursued and shown by the affidavit is that which is reasonable under the circumstances and not all possible diligence which may be conceived. Nor is it that diligence which stops just short of the place where if it were continued might reasonably be expected to uncover an address ... of the person on whom service is sought.

*Haselow*, 212 Wis. 2d at 589. Although case law defining "reasonable diligence" is sparse, § 801.11 requires the pursuit of any "leads or information reasonably calculated to make personal service possible." *West v. West*, 82 Wis. 2d 158, 166, 262 N.W.2d 87 (1978).

### 1. Personal Service: Reasonable Diligence

¶ 11. Loppnow argues that the trial court erred in its determination that his efforts to locate Bielik failed to satisfy the "reasonable diligence" requirement under WIS. STAT. § 801.11(1). Because there are no hard and fast standards as to what facts fulfill the requirements of "reasonable diligence" under § 801.11, we are guided by case law.

---

2. Pursuant to the law for the substituted service of summons or like process upon defendants in actions brought in courts of general jurisdiction of the state in which service is made.

(c) If with reasonable diligence the defendant cannot be served under par. (a) or (b), service may be made by publication of the summons as a class 3 notice, under ch. 985, and by mailing. If the defendant's post-office address is known or can with reasonable diligence be ascertained, there shall be mailed to the defendant, at or immediately prior to the first publication, a copy of the summons and a copy of the complaint. The mailing may be omitted if the post-office address cannot be ascertained with reasonable diligence.

. . . .

¶ 12. We begin with *Span v. Span*, 52 Wis. 2d 786, 790, 191 N.W.2d 209 (1971), which instructs that an affidavit that recites, as a conclusion, that reasonable diligence was exercised is not in itself sufficient. Looking to *West*, 82 Wis. 2d at 162, 164–65, we learn that a "not found" notice and a "due diligence" statement from a sheriff, without more, is not sufficient to satisfy the reasonable diligence requirement when the plaintiff had information concerning the defendant's possible whereabouts which he did not communicate to counsel. In *West*, the trial court cited the plaintiff's failure to contact his relatives or the defendant's relatives who resided in the defendant's state to ascertain whether they might have knowledge as to the defendant's whereabouts. *Id.* at 165. The supreme court agreed that the defendant had failed to "exhaust with due diligence any leads or information reasonably calculated to make personal service possible." *Id.* at 166–67.[6]

¶ 13. In *Haselow*, the plaintiff's process server was told by the defendant's father that the defendant was not residing at the Appleton address where personal service was attempted, but that he was either working or living in Hawaii. *Haselow*, 212 Wis. 2d at 584, 588–89. In concluding that the plaintiff had not exercised due diligence, the court explained:

> Consistent with due diligence, [the plaintiff] was required to reasonably follow up to attempt service. Thus, even if we assume that no further effort to serve [the defendant] in Appleton was required, no attempt was made to effect personal service in Hawaii. There is no indication of any attempt to contact the postmaster,

---

[6] Both *Span v. Span*, 52 Wis. 2d 786, 191 N.W.2d 209 (1971), and *West v. West*, 82 Wis. 2d 158, 262 N.W.2d 87 (1978), examined service of process in terms of "due diligence."

or to determine if [the defendant] had other relatives, friends, neighbors or business associates who had relevant information.

 . . . .

Because [the plaintiff] made only a single inquiry of [the defendant's] father and immediately attempted substitute service, we agree with the trial court's finding of lack of due diligence.

*Id.* at 589.

¶ 14. While *Span*, *West*, and *Haselow* each concerned efforts that did not fulfill the diligence requirement, this court's decision in *Welty* involved efforts that did. In *Welty*, the plaintiff made repeated attempts to serve the defendant at his only known residence and, when unsuccessful, inquired as to the defendant's whereabouts to determine if he was within or without the state, and followed up on information obtained. *Welty*, 124 Wis. 2d at 325–26. In examining the plaintiff's efforts, the *Welty* court noted *West's* suggestion that "under these circumstances, immediate family members should be contacted, but the record reveals nothing with regard to the existence of such family members." *Welty*, 124 Wis. 2d at 326 (citation omitted). Based on the plaintiffs' repeated attempts to serve the defendant at his only known address, "their efforts to discover his whereabouts and the lack of leads or information as to his whereabouts while outside the state," the court concluded that the plaintiff had exercised reasonable diligence to serve the defendant under Wis. Stat. § 801.11(1)(a). *Welty*, 124 Wis. 2d at 326.

¶ 15. The guiding principle in these cases is that, when pursuing any leads or information reasonably calculated to make personal service possible, the plaintiff must not stop short of pursuing a viable lead—or in

813

other words, stop short "of the place where if [the diligence] were continued might reasonably be expected to uncover an address . . . of the person on whom service is sought." *Haselow*, 212 Wis. 2d at 589. In *West*, the plaintiff stopped short of pursuing information he had about the defendant's whereabouts, and also stopped short of making an inquiry to either his relatives or defendant's relatives who were likely to know the defendant's whereabouts. *West*, 82 Wis. 2d at 164–65. In *Haselow*, the plaintiff stopped short of attempting to locate the defendant in Hawaii despite information from the defendant's father that he was living there. *Haselow*, 212 Wis. 2d at 589. Here, there is simply no evidence that Loppnow "stopped short" in his pursuit of Bielik's address, in Orlando or elsewhere.

¶ 16. It is undisputed that Bielik's attorney answered the complaint in late July advising that Bielik no longer lived at his Oconomowoc, Wisconsin address. After learning from Grady that Bielik was in Florida, Loppnow's attorney repeatedly attempted to obtain Bielik's new address from Grady, both as Bielik's attorney in this action and as a family friend who supported Bielik in the criminal proceeding. Kyle's mid-August correspondence to Grady indicates Kyle's awareness that, at Bielik's June 16, 2008 sentencing hearing, Bielik and his attorney informed the court that Bielik would be attending the University of Central Florida in Orlando in the fall. The sentencing record also indicates Bielik's intent to "return to Florida" in "early July."

¶ 17. When Kyle's attempt to obtain Bielik's Florida address from Grady failed, the record reflects that Loppnow unsuccessfully attempted to obtain the information from Bielik's parents. When that attempt failed, Loppnow hired an investigative firm in Orlando that searched local, state, and national databases for

information as to Bielik's address and also contacted the University of Central Florida in Orlando to learn his whereabouts. The investigative firm reported two addresses for Bielik, neither in Orlando.

¶ 18. Finally, Loppnow obtained information from the National Student Clearinghouse which identified Bielik as a full-time student at the University of Central Florida with a "term start" date of August 25, 2008, and a "term end" date of December 13, 2008, but provided a Marathon, Florida address for him, not Orlando. The National Student Clearinghouse information which was "certified by" the school on August 22, 2008, indicates that "[a]ll information verified was obtained directly and exclusively from the individual's educational institution."

¶ 19. The timing of Loppnow's attempt to locate Bielik in Orlando is significant. After learning at the end of July that Bielik did not have a Wisconsin address, Kyle then unsuccessfully sought information from Bielik's attorney and parents. As of mid-August, Loppnow had information that Bielik stated an intent at the sentencing hearing to start school in Orlando in the fall. Although Kyle's searches had repeatedly pointed him to the Marathon, Florida address, he nevertheless began a search in Orlando in late August 2008, when Bielik presumably would be in Orlando starting school. At that time, Loppnow hired an investigative agency located in Orlando to search for Bielik.[7] The investigative agency contacted the registrar's office

---

[7] In reviewing the affidavit of the Kelley investigative agency in Orlando, Florida, the trial court acknowledged that it lists "all of the places they looked using a driver's license efforts [sic], utility records, telephone records . . . the type of search vehicles that would typically be looked at to try to determine where someone is if you are trying to locate them."

at University of Central Florida in Orlando; however, it was unable to provide any information for Bielik. The Orlando agency's broad search resulted in two addresses in Lutz, Florida, at which Kyle then made unsuccessful attempts at service. Finally, in early September, Loppnow made a specific search of the National Student Clearinghouse and the school certified information from that search lists the Marathon, Florida address.[8]

¶ 20. Like the plaintiffs in *Welty*, Loppnow attempted service at every address known for Bielik and made inquiries as to other addresses with no success. *Welty*, 124 Wis. 2d at 328. The *Welty* court determined that when a defendant is receiving mail at an address known to only a few people and the plaintiffs' inquiries result in no information regarding the defendant's whereabouts, the discovery of such an address would require "extraordinary diligence." *Id.* at 327, 328.

¶ 21. In sum, Loppnow's efforts were consistent with case law on "reasonable diligence." Loppnow obtained information that Bielik was residing out of state and made repeated efforts to locate him and narrow his search based on all of the information available to him, including that Bielik would be attending the University of Central Florida in the fall. While Bielik claims that Loppnow failed to undertake a search in the Orlando area, it stands to reason that, with knowledge as to Bielik's Marathon, Florida and Oconomowoc, Wisconsin addresses, there would be only one reason to hire an

---

[8] While certain earlier information indicated that this was Bielik's parents' residence, there is no indication that he did not also reside there or use it as his address. In fact, the National Student Clearinghouse information indicates that as late as August 2008, Bielik's address of record for the University of Central Florida was the Marathon, Florida address.

investigative agency in Orlando, and that would be to locate Bielik's student residence.[9] The Kelley agency's attempt to locate Bielik through the University of Central Florida's Office of the Registrar in Orlando confirms the same. We conclude that Loppnow exercised reasonable diligence under WIS. STAT. § 801.11.

*2. Substitute Service by Publication*

¶ 22. Having concluded that Loppnow exercised reasonable diligence in attempting personal service, we

---

[9] Loppnow devotes much of his brief to his contention that the trial court erred in considering evidence submitted by Bielik that an investigative agency hired by the defense in late September was able to locate Bielik's address in Orlando. However, the trial court's oral ruling makes clear that it did not consider this evidence in arriving at its ruling. The trial court stated:

> I take into account and I considered the evidence put forth by [Bielik] and their own efforts to locate Mr. Bielik in Orlando and their success at it as they represented to be a blind effort to locate him.
>
> In looking at that, I haven't considered that in my ruling, [it] was a different timing, different situation, things change. So, I was only focused on what . . . the plaintiff did from the standpoint of my analysis being that it's the plaintiff's reasonable diligence, what information plaintiff had and how plaintiff exercised and used that information to attempt to find Mr. Bielik.

While Bielik does not ask us to consider this evidence on appeal, we share the trial court's concerns. First, the timing is different. To the extent Bielik challenged the competency of the searches by the two investigative agencies, he provided no specifics regarding information that was available at that time but not found. Moreover, it is Loppnow's efforts that are at issue, and there is no evidence to show that his attorney had reason to believe that the agencies' searches were inadequate or failed to pursue any leads or information reasonably calculated to uncover an address. *See West*, 82 Wis. 2d at 166; *Haselow v. Gauthier*, 212 Wis. 2d 580, 589, 569 N.W.2d 97 (Ct. App. 1997). Like the trial court, we will not consider this evidence submitted by the defendant.

turn to Bielik's contention that Loppnow's attempt at substituted service failed to comply with WIS. STAT. ch. 985, governing publication. Pursuant to WIS. STAT. § 801.11(1)(c), if personal service is not possible with reasonable diligence, then service "may be made by publication of the summons as a class 3 notice, under ch. 985." WISCONSIN STAT. § 985.02 governing "method of notification" provides that "a legal notice shall be published in a newspaper likely to give notice in the area or to the person affected."

¶ 23. Bielik contends that Loppnow's publication of service in the Key West Citizen in an effort to reach Bielik at his Marathon, Florida address fails to satisfy WIS. STAT. § 985.02. We disagree. Bielik's argument is based on the fact that the circulation of the Key West Citizen does not extend to the Orlando area, and also that the process server had noted that the Marathon address was "shuttered" and appeared unoccupied. However, the summary judgment record reflects that at the time of publication in early September 2008, the only address repeatedly identified as Bielik's last-known address was the Marathon, Florida address. The Marathon address was identified by Accurint, two investigative agencies, and most significantly, the National Student Clearinghouse which had up-to-date information regarding Bielik and his enrollment as a student for the fall 2008 term. None of that information confirmed an address for Bielik in Orlando. Based on our determination that Loppnow demonstrated reasonable diligence in his attempt to ascertain Bielik's whereabouts, we cannot fault Loppnow for publishing in the area where his search indicated it would be "likely to give notice."[10] *See*

[10] In *Electro-Measure, Inc. v. Ewald Enter prises, Inc.*, 398 N.W.2d 85, 88 (Ct. App. Minn. 1986), the court examined

§ 985.02. We therefore conclude that Loppnow's substituted service by publication was sufficient under § 985.02.

## CONCLUSION

¶ 24. We conclude that the facts of record support a determination that Loppnow exercised reasonable diligence in attempting personal service on Bielik under WIS. STAT. § 801.11. We further conclude that Loppnow's substituted service by publication complied with the requirements of WIS. STAT. § 985.02. We therefore reverse the trial court's grant of summary judgment in favor of Bielik and remand with directions to reinstate Loppnow's claims against Bielik.

*By the Court.*—Order reversed and cause remanded with directions.

Wisconsin case law and statutes to reach a conclusion that publication must be "reasonably calculated" to reach the interested party. The court cited to *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950), for the following proposition: "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Electro-Measure, Inc.*, 398 N.W.2d at 88. We note that Wisconsin courts have recognized this as well, *Haselow*, 212 Wis. 2d at 586; however, they have not expressly applied the "reasonably calculated" language to WIS. STAT. § 985.02.