**2021 WI App 57**

# COURT OF APPEALS OF WISCONSIN
## PUBLISHED OPINION

Case No.:         2020AP309

Complete Title of Case:


BETH CULVER,

PLAINTIFF-RESPONDENT,

V.

ADILAKSHMI KAZA,

DEFENDANT-APPELLANT,

KENOSHA MEDICAL CENTER AND UNITED HOSPITAL SYSTEM AND
MEDICAL COLLEGE OF WISCONSIN,

DEFENDANTS,

UNITED HEALTHCARE OF WISCONSIN, INC.,

INTERVENOR.


| | |
|---|---|
| Opinion Filed: | July 28, 2021 |
| Submitted on Briefs: | December 17, 2020 |

| | |
|---|---|
| JUDGES: | Neubauer, C.J., Reilly, P.J., and Gundrum, J. |
| Concurred: | |
| Dissented: | |

| | |
|---|---|
| Appellant | |
| ATTORNEYS: | On behalf of the defendants-appellants, the cause was submitted on the briefs of *Michael L. Johnson* and *Randall L. Guse* of *Otjen Law Firm, S.C.*, Waukesha. |

Respondent
ATTORNEYS:  On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Phillip J. Oliver* of *A Law Office of Phillip J. Oliver, P.C.*, Chicago, IL and *Scott B. Wolfman* (admitted pro hac vice) of *D&W Law Group*, Chicago, IL.

# COURT OF APPEALS
## DECISION
## DATED AND FILED

## July 28, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2020AP309**

**STATE OF WISCONSIN**

Cir. Ct. No. **2019CV279**

**IN COURT OF APPEALS**

---

BETH CULVER,

　PLAINTIFF-RESPONDENT,

V.

ADILAKSHMI KAZA,

　DEFENDANT-APPELLANT,

KENOSHA MEDICAL CENTER AND UNITED HOSPITAL SYSTEM AND MEDICAL COLLEGE OF WISCONSIN,

　DEFENDANTS,

UNITED HEALTHCARE OF WISCONSIN, INC.,

　INTERVENOR.

---

APPEAL from an order of the circuit court for Kenosha County: CHAD G. KERKMAN, Judge. *Affirmed.*

Before Neubauer, C.J., Gundrum and Davis, JJ.

¶1    NEUBAUER, C.J. Dr. Adilakshmi Kaza appeals from an order denying her motion to dismiss Beth Culver's medical malpractice complaint.[1] Kaza argues that the circuit court erred in ruling, in part based on a process server's affidavit of service, that Culver exercised reasonable diligence in attempting personal service on Kaza and that the substitute service of leaving the summons and complaint with the security guard at Kaza's gated community was sufficient to confer personal jurisdiction over Kaza. We agree with the court's conclusions and, accordingly, we affirm.

## BACKGROUND

¶2    Culver filed the complaint on March 7, 2019, alleging negligence during a surgery Kaza performed on Culver in Wisconsin. Sometime after the surgery, Kaza established residence in a gated community in Las Vegas, Nevada.

¶3    On April 20, 2019, process server Anthony Spada attempted personal service on Kaza at her residence in Las Vegas inside a guard-gated community. Spada's signed and notarized Affidavit of Service states that he was denied entry by the gated community's security guard. Spada attests that the security guard called Kaza and told her there was a process server with legal papers at the gate. Spada states that Kaza instructed the security guard not to allow the process server through the gate. The security guard then told Spada the documents would be delivered to Kaza's residence. Spada left the summons and complaint with the security guard, identified as "NI Ruiz."

---

[1] This court granted leave to appeal the order. *See* WIS. STAT. RULE 809.50(3) (2019-20). All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

¶4 In addition to serving a copy of the summons and complaint on Kaza via the security guard at the gate, Kaza was also sent a copy via certified mail.

¶5 In her May 29, 2019 answer and affirmative defenses, Kaza asserted the court lacked personal jurisdiction, alleging service of the summons and complaint was improper.

¶6 On July 30, 2019, a second attempt was made to serve Kaza personally at the same residence. This time the service was successful. However, the successful service was made 145 days after Culver filed the complaint—well beyond the ninety days permitted for service.

¶7 In September, Kaza moved to dismiss, and in support, submitted an affidavit stating that on April 20, 2019, "[she] was never advised by a security guard or any other individual that a process server with legal papers was present outside the gate of [her] residential neighborhood," and she did not instruct the guard to deny access to a process server.

¶8 The circuit court held a hearing on Kaza's motion to dismiss. Kaza argued that the process server failed to exercise "reasonable diligence" with his one attempt to effect personal service before resorting to substitute service. Kaza further argued that the process server's affidavit identified the wrong home address, as it was missing a digit.[2] Kaza pointed out that she was ultimately successfully served at her same personal residence in Las Vegas, establishing that personal service at her gated community residence was possible with reasonable diligence and thus substitute service was not warranted.

---

[2] The address on the summons and complaint was correct. The service affidavit was missing a digit in Kaza's address—1102 instead of 11092.

¶9    The circuit court disagreed with Kaza, finding that there was "reasonable diligence" because the process server went to Kaza's home which was in a different state, inside a gated community, and was denied entry. The court found that the process server's decision to resort to substitute service under Nevada law was appropriate.[3] The court explained as follows:

> I do find that there was reasonable diligence by going to a gated community, by going to [Kaza]'s home. And then if [Kaza] says I'm not going to allow you inside this gated community, I'm not going to allow myself to be served, what else can they do but to continue with Nevada law and serve the guard.

Kaza appeals.

---

[3] WISCONSIN STAT. § 801.11(1)(b)2. provides that if personal service cannot be made on a defendant, service can be perfected "[p]ursuant to the law for the substituted service of summons or like process upon defendants in actions brought in courts of general jurisdiction of the state in which service is made." Under Nevada law,

> A person who resides at a location to which access is not reasonably available except through a gate may be lawfully served with any legal process in the manner provided in this section. If there is:
>
>     (a) A guard posted at the gate and the guard denies access to the residence for service of process, service of process is effective upon leaving a copy thereof with the guard.

NEV. REV. STAT. § 14.090(1)(a) (2021). This statute was in effect in 2019 when the process server left the summons and complaint with the security guard. Kaza does not dispute that, if reasonable diligence were employed, substitute service by leaving the papers with the guard would be proper under § 801.11(1)(b)2.

**DISCUSSION**

*Standards of Review*

¶10    Kaza argues that the circuit court erred in relying on the process server's affidavit of service, contending the affidavit contains hearsay and fails to establish reasonable diligence.

¶11    "The [circuit] court has discretion concerning the nature of the proof it may consider when it decides whether [a defendant] was served with the summons and complaint." ***Honeycrest Farms, Inc. v. A.O. Smith Corp.***, 169 Wis. 2d 596, 603, 486 N.W.2d 539 (Ct. App. 1992). We will sustain a discretionary determination if the facts of record and correct legal standards are stated and considered together to achieve a reasoned and reasonable decision. ***Rodak v. Rodak***, 150 Wis. 2d 624, 631, 442 N.W.2d 489 (Ct. App. 1989).

¶12    The decision on the admissibility of a hearsay statement is within the discretion of the circuit court. ***Christensen v. Economy Fire & Cas. Co.***, 77 Wis. 2d 50, 55-56, 252 N.W.2d 81 (1977). An error of law constitutes an erroneous exercise of discretion. ***Steinmann v. Steinmann***, 2008 WI 43, ¶20, 309 Wis. 2d 29, 749 N.W.2d 145.

¶13    "We uphold a circuit court's findings of fact unless they are clearly erroneous." ***Phelps v. Physicians Ins. Co. of Wis.***, 2009 WI 74, ¶34, 319 Wis. 2d 1, 768 N.W.2d 615. "[A] finding of fact is clearly erroneous when 'it is against the great weight and clear preponderance of the evidence.'" ***Id.***, ¶39 (citation omitted).

¶14    Where the underlying material facts regarding diligence in service of process are undisputed, the legal significance of such attempts is a question of law

to be addressed independently by the reviewing court. *Loppnow v. Bielik*, 2010 WI App 66, ¶9, 324 Wis. 2d 803, 783 N.W.2d 450.

*The Circuit Court Did Not Err in Considering the Process Server's Affidavit of Service*

¶15   In *Honeycrest*, we provided the framework for the circuit court to consider an affidavit of service. *Honeycrest*, 169 Wis. 2d at 603-04.[4]  We held that an officer's uncontradicted certificate of service is adequate proof of service, but that it may be overcome with "clear and satisfactory proof" to the contrary.  *Id.* at 603 (citation omitted).   In other words, an affidavit of service is entitled to a presumption of correctness.  If the affidavit sets forth prima facie evidence of proper service, the defendant must provide proof that clearly and satisfactorily disputes the facts set forth.  The court has discretion regarding the nature of proof considered, including witnesses, which may be "preferable" when the issue of service is largely a matter of credibility because the evidence is "irreconcilably in conflict."  *Id.* at 604.[5]

---

[4] WISCONSIN STAT. § 801.08 provides that all issues of fact and law raised by an objection to the court's jurisdiction over the person shall be heard by the court without a jury in advance of any issue going to the merits of the case.

[5] In *Honeycrest Farms, Inc. v. A.O. Smith Corp.*, 169 Wis. 2d 596, 486 N.W.2d 539 (Ct. App. 1992), we ruled that a court is not required to hold a hearing with live witness testimony in every case where service is contested.  As we explained:

> We do not hold that due process compels the use of witnesses on issues regarding service of process in every case.  Courts have always recognized the flexibility of due process, which requires only the procedural protections a particular situation demands, and does not compel in-court witnesses in all cases.  Due process requires nothing more than a hearing that is appropriate to the nature of the case.

*Id.* at 604 (citations omitted).

¶16     Kaza begins with a challenge to the circuit court's reliance on the process server's affidavit.  Kaza has forfeited this challenge on appeal because she failed to fully develop this argument before the circuit court.  *See Schonscheck v. Paccar, Inc.*, 2003 WI App 79, ¶¶10-11, 261 Wis. 2d 769, 661 N.W.2d 476.  This is not a mere rule of convenience:  it is essential to the orderly administration of justice.  The rule promotes efficiency and justice by giving the parties and the circuit court notice, allowing the court to correct or avoid the alleged error, encouraging the attorneys to prepare diligently, all to the end of eliminating the need for appeal. It also avoids sandbagging by a party failing to object and later claiming error.  *See, e.g.*, *State v. Counihan*, 2020 WI 12, ¶¶26-27, 390 Wis. 2d 172, 938 N.W.2d 530. Clearly here, a developed challenge to the admissibility of the affidavit could have been promptly addressed by the parties and the court, as Spada was available to testify.

¶17     That said, we reject Kaza's insufficiently developed challenge (on appeal as well) on the merits, as the circuit court did not erroneously exercise its discretion in considering the affidavit.  First, Kaza appropriately concedes that the statutorily required affidavit is admissible.[6]  As *Honeycrest* and numerous other

---

[6]  WISCONSIN STAT. § 801.10(4)(a) provides in relevant part:

   **(4) Proof if service challenged.**  If the defendant appears in the action and challenges the service of summons upon the defendant, proof of service shall be as follows:

   **(a)** Personal or substituted personal service shall be proved by the affidavit of the server indicating the time and date, place and manner of service ... If the defendant is not personally served, the server shall state in the affidavit when, where and with whom the copy was left, and shall state such facts as show reasonable diligence in attempting to effect personal service on the defendant.

7

cases make clear, a sworn affidavit of service constitutes prima facie evidence of service. Reliance on the affidavit does not constitute error.[7]

¶18    We also reject Kaza's contention that the circuit court erroneously relied on inadmissible hearsay, namely, the security guard's statements telling Kaza there was a process server with legal papers, and reporting to Spada that Kaza instructed the guard to deny entry and the guard would deliver the documents to the residence.

¶19    As set forth in WIS. STAT. § 801.10(4)(a), a process server who is unable to effect personal service is directed to "state such facts as show reasonable diligence in attempting to effect personal service on the defendant." The statute imposes a duty by law that undoubtedly will include hearsay at times. This process is based upon the presumption of reliability associated with providing an affidavit that process servers will perform their duties neutrally and professionally, that there is no inherent bias as there is no financial or personal relationship with the parties, and that public inspection to which many such records are subject will disclose inaccuracies. In other words, the affidavit is clothed with "circumstantial guarantees of trustworthiness" comparable to the recognized hearsay exceptions. *See* WIS. STAT. § 908.03(24).[8]

---

[7] In Wisconsin, we rely on affidavits of service as proof of service as a matter of course. *See generally* ***State v. One 1997 Ford F-150***, 2003 WI App 128, 265 Wis. 2d 264, 665 N.W.2d 411; ***State v. Boyd***, 2000 WI App 208, 238 Wis. 2d 693, 618 N.W.2d 251; ***Dietrich v. Elliott***, 190 Wis. 2d 816, 528 N.W.2d 17 (Ct. App. 1995).

[8] We also note that state and federal courts have taken various approaches to grounds for considering an affidavit of service. As set forth in ***State v. Phillips***, 974 P.2d 1245, 1248 (Wash. Ct. App. 1999):

¶20 Although involving a challenge to "hearsay within hearsay" in public records, the discussion in ***State v. Winant***, No. 2014AP1944, unpublished slip op. ¶16 (WI App July 21, 2015) (cited for persuasive value per WIS. STAT. RULE 809.23(3)(b)), is instructive. In that case, we rejected a challenge to hearsay within admissible public records under WIS. STAT. § 908.03(8), because the public officials were legally obligated to investigate and report on the matter at hand. The officials were statutorily obligated to report what happened, how it happened, why it happened, and who caused it to happen. ***Winant***, No. 2014AP1944, ¶¶19-22.

¶21 Kaza also ignores Wisconsin cases in which process servers attest to what was said by those they encountered when they sought to serve. *See, e.g.*, ***Beneficial Fin. Co. of Wis. v. Lee***, 37 Wis. 2d 263, 268, 155 N.W.2d 153 (1967)

---

Courts of other jurisdictions have held returns of service admissible as public records. *See **United States v. Union Nacional de Trabajadores***, 576 F.2d 388 (1st Cir. 1978); ***Cordova v. State***, 675 So. 2d 632, 637 [(Fla. Dist. Ct. App. 1996)]. The court in ***Union Nacional*** noted that at common law, a sheriff's return was admissible under the official records exception to the hearsay rule. ***Union Nacional***, 576 F.2d at 390-91. Washington's statutory public records exception has been held to be a codification of the common law public records exception. [***State v. Monson***, 784 P.2d 485, 488, 490 (Wash. 1989)]. Authors of treatises have also concluded that returns of service are admissible as public records. *See* 5 JOHN HENRY WIGMORE, EVIDENCE § 1664 (James H. Chadbourn ed., 1974); 2 SPENCER A. GARD, JONES ON EVIDENCE, § 12:24 at 387 (1972) (limiting admissibility to returns of service that, as here, an officer is required by law to make).

Here, we need not rely on the public records exception, and decline to do so because there is no indication that the process server is affiliated with a public office or agency. Nevertheless, the basis for the exception is equally applicable. Wisconsin's public records exception is based on the same considerations. The performance of public duties, often required by law, is entitled to a presumption of admissibility unless the sources of information or other circumstances indicate lack of trustworthiness.

(process server testified that wife said defendant was not home); ***State v. Boyd***, 2000 WI App 208, ¶¶23-24, 238 Wis. 2d 693, 618 N.W.2d 251.

¶22 Here, Spada reported what happened, how it happened, why it happened, and who caused it to happen. He reasonably relied on the fact that the residents positioned the security guard at the gate with a phone to call them with requests to enter and authority to deny entry absent approval. This guard, after making a call, advised that Kaza was denying entry—clearly conveying to Spada that the guard was authorized by Kaza to state that she was denying entry. Kaza offers nothing to the contrary.[9] We see nothing in Spada's affidavit that indicates it is untrustworthy. Each of the security guard's statements was made directly to Spada. Given the directives of WIS. STAT. § 801.10(4)(a) to process servers, along with our case law affording affidavits of service a presumption of correctness, we conclude that the affidavit has sufficient guarantees of trustworthiness such that the circuit court did not err in relying on it. *See* WIS. STAT. § 908.03(24).

¶23 Kaza also contends that the circuit court erred in relying on the affidavit of service because the address contained an extra digit. We disagree. Spada's interaction with the guard after Spada identified Kaza as the intended resident recipient of the summons and complaint indicated that the guard clearly recognized Kaza as a resident of the gated community. The guard made a phone call and denied access, while also taking the papers for delivery. These events all support a factual conclusion that the process server was at the correct address.

---

[9] While raised by Culver, neither party adequately addresses the exception to hearsay for statements offered against a party that is "[a] statement by a person authorized by the party to make a statement concerning the subject." *See* WIS. STAT. § 908.01(4)(b)3.

While unstated, the circuit court's rejection of Kaza's address argument is not clearly erroneous.

¶24 We further conclude that the circuit court did not erroneously exercise its discretion in deciding that Kaza was properly served based on the affidavits alone and without holding an evidentiary hearing with live witness testimony.[10]

¶25 There is nothing in Kaza's affidavit that is "irreconcilably in conflict" with the process server's affidavit. *See Honeycrest*, 169 Wis. 2d at 603-04. Her statements do not show by "clear and satisfactory proof" that the interaction and communications Spada had with the guard did not take place. *See id.* at 603. Kaza provides nothing from the security guard, much less anything that directly contradicts the facts recited by Spada. Indeed, she does not deny that the promised delivery occurred. *See State v. One 1997 Ford F-150*, 2003 WI App 128, ¶14, 265 Wis. 2d 264, 665 N.W.2d 411 (explaining that "when resolving a sufficiency of the service of process question" circuit court could rely on affidavits in making credibility determination as to service); *Boyd*, 238 Wis. 2d 693, ¶¶23-24 (concluding that circuit court did not err in finding that affidavit of service plus clerk's time stamp were adequate to establish proof of service when contested and that there is no requirement "that the affiant's statements be unqualified").

¶26 Because Kaza failed to rebut the affidavit of service, the circuit court did not erroneously exercise its discretion in relying on Spada's affidavit.

---

[10] Neither party takes issue in their briefing with the fact that the circuit court ruled on Kaza's motion to dismiss on the basis of the affidavits rather than live testimony. Nonetheless, for the sake of completeness, we explain why the approach taken by the court here is an acceptable procedure, depending on the specific facts of the case.

*The Process Server Exercised Reasonable Diligence*

¶27    Kaza argues that the process server did not exercise "reasonable diligence," as required by WIS. STAT. § 801.11(1), before resorting to substitute service. Kaza complains that Spada never interacted with her, or a family member or agent, and argues that, as a matter of law, one attempt at service at the guarded gated community cannot ever equal "reasonable diligence."

¶28    "WISCONSIN STAT. § 801.11 governs personal jurisdiction and the service of process in Wisconsin." *Loppnow*, 324 Wis. 2d 803, ¶10. Those attempting personal service under § 801.11(1) must employ "reasonable diligence" before resorting to an alternative method of service. *Loppnow*, 324 Wis. 2d 803, ¶10.

¶29    Reasonable diligence is a question of what is reasonable under the facts of a particular case. *See Haselow v. Gauthier*, 212 Wis. 2d 580, 589, 569 N.W.2d 97 (Ct. App. 1997). In *Haselow*, we stated,

> The diligence to be pursued and shown by the affidavit is that which is reasonable under the circumstances and not all possible diligence which may be conceived. Nor is it that diligence which stops just short of the place where if it were continued might reasonably be expected to uncover an address ... of the person on whom service is sought.

*Id.* (citation omitted).

¶30    We agree with the circuit court that Spada exercised "reasonable diligence" when he went to the gated community where Kaza lived in Nevada, was denied entry by the security guard, and executed substitute service on Kaza by leaving the summons and complaint with the guard. We reject Kaza's argument

that one attempt at service before switching to substitute service cannot ever satisfy the "reasonable diligence" requirement of WIS. STAT. § 801.11(1).

¶31 Even if the circuit court accepted Kaza's denial that she was contacted and instructed the guard to deny access, Spada reported that the security guard made a call to Kaza advising that the process server was seeking access to serve Kaza. The guard then told Spada that Kaza had denied entry and took the papers for delivery (with the appearance the guard was authorized to deliver them to Kaza). The guard did not offer to have Spada speak directly to Kaza. It is reasonable to conclude that any request to do so would be denied.

¶32 *Horrigan v. State Farm Insurance Co.*, 106 Wis. 2d 675, 317 N.W.2d 474 (1982), is instructive. In that case, our supreme court concluded the process server reasonably relied on the receptionist's statement that she would get someone to receive process who was authorized to accept service for the company, even though the individual who appeared was not. *Id.* at 683. The court determined that the process server did not need to question the individual or otherwise confirm authority. The process server reasonably relied on the appearance of authority. *Id.* at 682-83 ("[T]he circumstances surrounding the service of process, as they appeared to the process server, are relevant."). Similarly, here Spada reasonably relied on the security guard's statements indicating that the guard was authorized to deny entry by Kaza and was authorized to deliver the legal papers. There is nothing in the record to suggest that Spada should have doubted what the guard reported to him.

¶33 Likewise, while Kaza argues that Spada should have tried again, it is certainly reasonable to conclude that there would be no different response the next time, or the time after that. We do not ask process servers to trespass or otherwise

force entry into a gated community after denial by the guard. Nor do we require process servers to engage in what would reasonably appear at the time to be fruitless attempts.[11]

¶34 The cases Kaza relies upon do not compel an opposite conclusion. To support her reasonable diligence argument, Kaza cites *West v. West*, 82 Wis. 2d 158, 262 N.W.2d 87 (1978), and *Beneficial Finance*, 37 Wis. 2d 263. In each case, the court found the process server failed to pursue service with "reasonable diligence" because there were clear leads or avenues to locate or serve the defendant that were not pursued. In other words, they failed to take steps that were reasonably available to make personal service possible.

¶35 In *West*, the plaintiff did not exhibit reasonable diligence before resorting to substitute service because the "[plaintiff] did not exhaust efforts to locate the precise mailing address of defendant." *West*, 82 Wis. 2d at 164. There were still many options available to the process server, including pursuit of an additional address known to the plaintiff. *Id.* at 166-67. In that case, "the only effort to effect service was to give … the sheriff the defendant's last known address. The facts, however, show[ed] that reasonable diligence would have made it possible to actually effect personal service." *Id.* at 167.

¶36 In *Beneficial Finance*, the process server went to the house of the defendant and was informed by a woman who identified herself as the wife of the defendant that he was not home. *Beneficial Finance*, 37 Wis. 2d at 268. The process server then served the defendant's wife and made a "not found" return. *Id.* Our

---

[11] That Kaza ultimately consented to service, something within her control given her residence within the gated community, does not change our analysis that it was reasonable for the process server to conclude that the initial denial would not change.

supreme court found that "reasonable diligence" "requires the use of a greater degree of diligence than has been demonstrated in this case …." *Id.* at 268-69. The process server had access to the residence and could have returned.

¶37 Here, Spada located Kaza and his request for access was denied by the security guard after he made a call. Spada was given no reason to believe that he would be granted access if he returned. The process server did not "stop[] just short" of determining where to serve Kaza, nor did the efforts at service "stop[] just short." *See Haselow*, 212 Wis. 2d at 589. There is nothing in the record to show that the process server was provided with information that things would ever be any different, no matter how many times he came back to the gate. Again, Kaza's affidavit offers nothing to suggest otherwise.

¶38 While we agree with the parties that "reasonable diligence" is analyzed under Wisconsin law, we find it relevant to the reasonableness analysis that Nevada law, which apparently both the process server and security guard were familiar with, permits a single attempt at personal service and then substitute service by leaving the document with the guard of a gated community after the guard denies access. *See* NEV. REV. STAT. § 14.090(1)(a) (2021). Nevada law recognizes that a single denied attempt at a guarded gated community is sufficient. This presumably reflects the realities of attempts to serve residents who can instruct guards to deny access and deliver legal papers. Nevada law does not require that the resident deny access or that the process server speak with the resident or a family member. Rather, Nevada law permits a process server to leave the legal papers as substitute service when "the guard denies access." *Id.* This was clearly the protocol both Spada and the guard reasonably employed given the realities of denied access at a guarded gated community.

¶39    Under these facts, the circuit court did not err in concluding that "reasonable diligence" was satisfied when the process server left the summons and complaint with the security guard at the gated community after the guard denied access.

## CONCLUSION

¶40    The circuit court did not erroneously admit and rely on the affidavit of the process server in concluding that Kaza was properly served. The process server exercised reasonable diligence when serving Kaza under WIS. STAT. § 801.11(1). We affirm the circuit court's decision.

*By the Court.*—Order affirmed.