STATE of Wisconsin,
Plaintiff-Respondent,

v.

Timothy Charles BAUER,
Defendant-Appellant.

Court of Appeals

*No. 2009AP1367–CR. Submitted on briefs March 16, 2010.
—Decided June 29, 2010.*

2010 WI App 93

(Also reported in 787 N.W.2d 412.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Catherine M. Canright*, Superior.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *J.B. Van Hollen*, attorney general, and *Katherine D. Lloyd*, assistant attorney general.

Before Hoover, P.J., Peterson and Brunner, JJ.

¶ 1. HOOVER, P.J.   Timothy Bauer appeals a judgment of conviction for a single count of manufacturing THC, as a party to the crime. Bauer argues the police unconstitutionally searched his vehicle because they were not permitted to conduct a search incident to arrest and because they used his probation agent as a "stalking horse" to evade the search warrant requirement. Bauer further argues there was insufficient evidence to convict him. The State inadequately responds to Bauer's search-incident-to-arrest argument. We therefore reverse and remand with directions to the circuit court to suppress all fruits of the search of Bauer's vehicle.

## BACKGROUND

¶ 2.   After several police visits to private lands containing marijuana plants, Dunn County Sheriff's Investigator Russell Cragin and another officer returned on October 10, 2007. They discovered that many of the plants had been harvested. There were foot trails leading from the plants toward a residence, which police later determined belonged to James Wells.

¶ 3.   The officers drove past the residence and Cragin observed Bauer in the yard, recognizing him from a previous arrest. The officers left and secured a search warrant for Wells' property. Nobody was present when police executed the warrant later that day. Once inside, police located a hidden, padlocked room behind one of the basement walls. The officers broke in and discovered numerous marijuana plants and other items used for growing marijuana.

¶ 4. Prior to procuring the search warrant for Wells' home, deputy Cragin had contacted Bauer's probation agent and informed her Bauer was seen at the property. The following morning, October 11, Cragin again spoke with the probation agent at a monthly meeting of various local government agencies. Cragin informed her of the evidence recovered from Wells' home, and she issued a pick-up order for Bauer. Police went to Bauer's girlfriend's home later that day to take him into custody, but he left before backup arrived. Police followed Bauer until he stopped at another location, making contact with him as he stepped out of his vehicle. Bauer was immediately placed under arrest and handcuffed. Bauer's vehicle was then searched and the officers seized a set of keys, pruning shears, and some marijuana particles found on the floor carpet. Bauer was initially at the back of his vehicle with one officer when it was being searched by another, but he was removed to a squad car when backup arrived. One of the keys taken from Bauer's vehicle fit the padlock on the door of Wells' grow room.

¶ 5. Bauer filed a motion to suppress the items seized from his vehicle and any statements he made. The circuit court denied Bauer's motion to suppress evidence, but did suppress some statements for the failure to Mirandize[1] him. Bauer was convicted of manufacturing THC, as a party to the crime, after a jury trial in which the key, the shears, and the marijuana particles were introduced as evidence against him.

## DISCUSSION

■■

¶ 6. Warrantless searches "are per se unreasonable under the Fourth Amendment [to the United

---

[1] *See Miranda v. Arizona*, 384 U.S. 436 (1966).

States Constitution,]—subject only to a few specifically established . . . exceptions." *Katz v. United States*, 389 U.S. 347, 357 (1967). Among the exceptions is a search incident to a lawful arrest. *Arizona v. Gant*, 129 S. Ct. 1710, 1716 (2009). This "exception derives from interests in officer safety and evidence preservation that are typically implicated in arrest situations." *Id.*

> In [*Chimel v. California*, 395 U.S. 752, 763 (1969), the United States Supreme Court] held that a search incident to arrest may only include "the arrestee's person and the area 'within his immediate control'— construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence." That limitation, which continues to define the boundaries of the exception, ensures that the scope of a search incident to arrest is commensurate with its purposes of protecting arresting officers and safeguarding any evidence of the offense of arrest that an arrestee might conceal or destroy. *If there is no possibility that an arrestee could reach into the area that law enforcement officers seek to search, both justifications for the search-incident-to-arrest exception are absent and the rule does not apply.*

*Gant*, 129 S. Ct. at 1716 (citations omitted, emphasis added).

¶ 7. In *New York v. Belton*, 453 U.S. 454 (1981), the Supreme Court considered *Chimel's* application to the automobile context. *See Gant*, 129 S. Ct. at 1716; *State v. Fry*, 131 Wis. 2d 153, 166–68, 388 N.W.2d 565 (1986). The Court held "that when a police[] [officer] has made a lawful custodial arrest of the occupant of an automobile, [the officer] may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." *Belton*, 453 U.S. at 460 (footnote omitted). Wisconsin adopted the *Belton* rule in *Fry*:

The *Belton* rule is a simple and reasonable rule governing the search of an automobile after an arrest is made. A police officer may assume under *Belton* that the interior of an automobile is within the reach of a defendant when the defendant is still at the scene of an arrest, but the defendant is not physically in the vehicle.

. . . .

By adopting the *Belton* rule, Wisconsin police officers can follow the [F]ourth [A]mendment's mandates without worrying about whether some different restrictions might be imposed on them under the Wisconsin Constitution.

*Fry*, 131 Wis. 2d at 174–75.

¶ 8.    *Gant*, however, recently clarified the *Belton* decision. The Supreme Court "reject[ed] th[e] [broad] reading of *Belton* and h[e]ld that the *Chimel* rationale authorizes police to search a vehicle incident to a recent occupant's arrest only when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search." *Gant*, 129 S. Ct. at 1719.[2]

---

[2] The Supreme Court further recognized, without discussion, that "[a]lthough it does not follow from *Chimel* [*v. California*, 395 U.S. 752 (1969)], we also conclude that circumstances unique to the vehicle context justify a search incident to a lawful arrest when it is 'reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle.' " *Arizona v. Gant*, 129 S. Ct. 1710, 1719 (2009) (quoting *Thornton v. United States*, 541 U.S. 615, 632 (2004) (Scalia, J., concurring)). The opinion's introduction setting forth its holding elaborated, at 1714:

Consistent with the holding in *Thornton* . . ., and following the suggestion in Justice Scalia's opinion concurring in the judgment in that case . . ., we also conclude that circumstances unique to the

¶ 9.   Here, the circuit court denied Bauer's suppression motion because it concluded the evidence recovered from his vehicle was obtained pursuant to a valid search incident to arrest. The court did not, however, have the benefit of considering *Gant*, which was decided roughly a year after the court denied Bauer's pretrial motion. Regardless, whether a search is reasonable is a question of constitutional fact, which we determine independent of the trial court's conclusion. *State v. Griffin*, 131 Wis. 2d 41, 62, 388 N.W.2d 535 (1986), *aff'd*, 483 U.S. 868 (1987). Bauer argues that per *Gant*, the search of his vehicle incident to arrest was unreasonable because he was already in custody and handcuffed, away from his vehicle's passenger compartment, when the search commenced. We are inclined to agree.

¶ 10.   We need not, however, resolve the issue. The State must establish that an exception to the search warrant requirement applies to any given search. *State v. Pallone*, 2000 WI 77, ¶ 29, 236 Wis. 2d 162, 613 N.W.2d 568. Yet, the State fails to address Bauer's

automobile context justify a search incident to arrest when it is reasonable to believe that evidence of the offense of arrest might be found in the vehicle.

While one might reasonably argue this "offense of arrest" exception recognized in *Gant* should apply here, the State has not done so. Because a probationer may be taken into custody on mere suspicion of rules violations, the issue is not only whether the rule should apply to probation apprehension requests, but how. *See* Wis. Admin. Code § DOC 328.22(2) (Dec. 2006) ("A client may be taken into custody and detained:   (a) For investigation of an alleged violation by the client; (b) After an alleged violation by the client to determine whether to commence revocation proceedings; (c) For disciplinary purposes; or (d) To prevent a possible violation by the client.").

argument relying on *Gant*. Instead, without ever acknowledging *Gant*, the State merely responds:

> Bauer's contention that the police somehow did not have authority to search his car upon his arrest is of no moment. It is black-letter law that a police officer may search the interior of an automobile "when the defendant is still at the scene of an arrest, but the defendant is not physically in the vehicle." *State v. Fry*, 131 Wis. 2d 153, 174, 388 N.W.2d 565 (1986). Whether Bauer was in his car when the search began or whether he had been removed from the car makes no difference as to whether the search was legal. The police search of Bauer's car was legal. *See id.*

■

¶ 11.   In light of the *Gant* decision, the broad rule adopted in *Fry*, 131 Wis. 2d at 174–75, is no longer good law, much less "black-letter law." "*Belton* does not authorize a vehicle search incident to a recent occupant's arrest after the arrestee has been secured and cannot access the interior of the vehicle." *Gant*, 129 S. Ct. at 1714. While citizens may be afforded greater protections under the Wisconsin Constitution, they may not be afforded less; they are always entitled to the minimum protections afforded by the Fourth Amendment to the United States Constitution, as interpreted by the United States Supreme Court. *See State v. Knapp*, 2005 WI 127, ¶ 59, 285 Wis. 2d 86, 700 N.W.2d 899; *State ex rel. La Follette v. Raskin*, 30 Wis. 2d 39, 49–50, 139 N.W.2d 667. We are perplexed that the State still relies on *Fry* despite Bauer's reliance on *Gant*.[3] We deem the State's failure to respond to Bauer's *Gant* argument as

---

[3] We recognize *Gant* is a relatively new case. It was, however, decided over six months prior to the State's submission. We recently applied *Gant* in *State v. Schlapper*, No. 2009AP2660, unpublished slip op. (WI App April 13, 2010). *See*

a concession. *See State v. Flynn*, 190 Wis. 2d 31, 39 n.2, 527 N.W.2d 343 (Ct. App. 1994) ("We will not decide issues that are not, or inadequately, briefed."); *Charolais Breeding Ranches, Ltd. v. FPC Secs. Corp.*, 90 Wis. 2d 97, 109, 279 N.W.2d 493 (Ct. App. 1979) (unrefuted arguments are deemed conceded).

¶ 12. The State also argues, apparently in response to Bauer's separate stalking-horse argument,[4] that Bauer's arrest and the search of his vehicle were authorized by *State v. Pittman*, 159 Wis. 2d 764, 465 N.W.2d 245 (Ct. App. 1990). The State correctly observes that *Pittman* permits police to enter a parolee's residence without an arrest warrant and seize him or her based only on an administrative apprehension request. However, the State then asserts, without citation or explanation, that "[u]nder the rationale of *Pittman*, the police were authorized by the probation hold to arrest Bauer and search his car. The police did not need a search warrant or consent for this purpose. Bauer was properly arrested and his car was legitimately searched pursuant to the probation hold."

■

¶ 13. *Pittman* does not support the State's assertion that police can conduct warrantless searches pursuant to a probation apprehension request. That case did not involve any issue relating to searches. Instead, the relevant precedent, which *Pittman* relied on, is

Wis. Stat. Rule 809.23(3)(b) (Sup. Ct. Order No. 08–02, 2009 WI 2, eff. 7–1–09) (allowing citation of certain unpublished decisions).

[4] We say "apparently," because the State's brief never mentions the term stalking horse nor sets off its argument separately from its search-incident-to-arrest argument. Indeed, Bauer's reply brief asserts the State conceded his stalking-horse argument by failing to respond.

found in *Griffin*. That case explicitly recognizes that warrantless searches conducted by police—as opposed to probation agents—are prohibited. *Griffin*, 131 Wis. 2d at 56. As we later summarized:

> A probation officer may search a probationer's residence without a warrant if the officer has reasonable grounds to believe that the probationer is violating the terms of his or her probation. This narrow exception, however, applies only to searches conducted by probation officials. It does not extend to searches conducted by the police.

*State v. Hajicek*, 230 Wis. 2d 697, 702, 602 N.W.2d 93 (Ct. App. 1999) (citations omitted), *rev'd on other grounds*, 2001 WI 3, 240 Wis. 2d 349, 620 N.W.2d 781. Thus, the probation apprehension request issued for Bauer did not, in and of itself, authorize an evidence search.

¶ 14. Because we reverse based on the State's failure to respond and address the application of *Gant*, we do not consider further Bauer's stalking-horse argument. *See State v. Castillo*, 213 Wis. 2d 488, 492, 570 N.W.2d 44 (1997) (cases should be decided on the narrowest possible grounds).

¶ 15. We now turn to Bauer's insufficiency of the evidence argument. While we typically refrain from addressing additional issues where we reverse a conviction on other grounds, we must nonetheless address Bauer's insufficiency argument because the remedy would be an acquittal rather than a new trial.[5] "[W]here a defendant claims on appeal from a conviction that the evidence is insufficient to sustain the conviction, the

---

[5] We recognize, however, that the practical effect of our opinion might be dismissal of the case.

appellate court is required to decide the sufficiency issue even though there may be other grounds for reversing the conviction that would not preclude retrial." *State v. Ivy*, 119 Wis. 2d 591, 610, 350 N.W.2d 622 (1984).

¶ 16.   Bauer argues the evidence, "even if believed and rationally considered by the jury, was still insufficient as a matter of law. There was no concrete evidence to prove, beyond a reasonable doubt, that Bauer knew that Wells was committing the crime of manufacturing THC *and* that Bauer had the purpose to assist Wells." Bauer also emphasizes that Wells testified Bauer was unaware of the marijuana growing operation.

¶ 17.   Bauer ignores the well-established standard of review set forth in his own brief. Reasonable doubt is not an appellate standard. Rather, the jury is the sole arbiter of the credibility of witnesses and alone is charged with the duty of weighing the evidence. *State v. Poellinger*, 153 Wis. 2d 493, 506, 451 N.W.2d 752 (1990). "If any possibility exists that the trier of fact could have drawn the appropriate inferences from the evidence adduced at trial to find the requisite guilt, an appellate court may not overturn a verdict . . . ." *Id.* at 507.

¶ 18.   The jury heard that Bauer's vehicle contained pruning clippers with green residue on them (but no detectable THC), some marijuana particles on the floor, and a key to the padlock on Wells' hidden marijuana growing operation. Bauer admitted being in Wells' home. The jury also learned that when Bauer was arrested, he told police marijuana plants "were beautiful plants, that God put them on the earth." We conclude there was ample evidence on which the jury could

rely to convict Bauer, especially given his possession of the padlock key directly tying him to the concealed growing operation.

■■■

¶ 19.   However, because the State fails to establish an exception to the search warrant requirement, all evidence seized as the result of the warrantless search of Bauer's vehicle must be excluded at trial as fruits of the poisonous tree. *See Wong Sun v. United States*, 371 U.S. 471, 487–88 (1963); *State v. Smith*, 131 Wis. 2d 220, 240–41, 388 N.W.2d 601 (1986). We therefore direct the circuit court to grant Bauer's motion to suppress evidence.

*By the Court.*—Judgment reversed and cause remanded with directions.