FITZPATRICK, J.[1]
¶1 Kathryn Cooper appeals from a judgment of conviction entered in the Portage County Circuit Court for operating a motor vehicle while intoxicated, as a third offense, in violation of WIS. STAT. § 346.63(1)(a). Cooper argues that evidence gathered during police officers' warrantless search, and the test result from a blood draw, should have been suppressed because Cooper did not consent to either the search or the blood draw. I disagree and affirm.
BACKGROUND
¶2 In February 2017, Cooper was charged with operating a motor vehicle while under the influence of an intoxicant and operating with a prohibited alcohol concentration, both as third offenses. WIS. STAT. § 346.63(1)(a), (b). Cooper moved to suppress evidence gathered during a warrantless search and the test result from a blood draw. The circuit court heard testimony, made findings of fact, and denied the suppression motions. More specifically, the circuit court found that Cooper had freely and voluntarily consented to the officers' entry and to the blood draw.
¶3 The following facts are either undisputed or are drawn from the findings of the circuit court.
¶4 In January 2017, City of Stevens Point Police Department officers responded to a call that a vehicle had struck a light pole. Department dispatch stated that a license plate had been left at the scene. Dispatch identified the owner of the license plate as Kathryn Cooper and provided the address of Cooper's house.
¶5 Sergeant Michael Retzki was on duty that day and responded to the address provided. Once on the street of the address, Sergeant Retzki spoke with a person who stated he had witnessed the accident and indicated that the vehicle involved was parked in Cooper's driveway.
¶6 Sergeant Retzki went to Cooper's driveway and observed that the vehicle had extensive damage and was leaking fluid. Sergeant Retzki also observed that there was a back door of the house with a light on, and he walked to the back porch. From the back porch, Sergeant Retzki saw Cooper walking around in the kitchen. Sergeant Retzki knocked on the back door, and Cooper waved at him to come into the house.
¶7 Sergeant Retzki opened the door, entered Cooper's house, and walked two to three feet into the kitchen area. Cooper did not say anything to Sergeant Retzki, who did not explicitly identify himself as a police officer. Sergeant Retzki told Cooper that he was investigating an accident and saw that her vehicle was damaged. He then asked whether Cooper recalled being in an accident.
¶8 Minutes later, Officer Dana Krzykowski arrived at Cooper's house and went to the back door. Sergeant Retzki opened the back door and waved for Officer Krzykowski to come in. When Officer Krzykowski entered the house, Cooper did not object to his entry, tell him not to come in, or otherwise say anything to him at that point. Officer Krzykowski questioned Cooper about the accident and took her outside the house to perform field sobriety testing. Based on his observations during field sobriety testing, Officer Krzykowski placed Cooper under arrest for operating a motor vehicle while under the influence of an intoxicant and then placed Cooper in the squad car. Officer Krzykowski read Cooper the standard "Informing the Accused" form. Cooper consented to a blood draw. The blood draw indicated that Cooper's blood alcohol concentration was .330 g/mL.
DISCUSSION
¶9 The first issue boils down to whether the officers had Cooper's consent to enter the house. The second issue is whether Cooper consented to the blood draw. For the following reasons, I affirm the judgment of the circuit court.
I. Standard of Review.
¶10 Whether a search or seizure is reasonable under the Fourth Amendment is a question of constitutional fact, which this court determines independently of the circuit court. State v. Bauer , 2010 WI App 93, ¶9, 327 Wis. 2d 765, 787 N.W.2d 412. The circuit court's findings of evidentiary and historical facts, however, are upheld unless those are contrary to the great weight and clear preponderance of the evidence. State v. Griffin , 131 Wis. 2d 41, 62, 388 N.W.2d 535 (1986), aff'd , 483 U.S. 868 (1987).
¶11 To determine whether the consent exception to the warrant requirement is satisfied, this court first reviews whether consent was given in fact by words, gestures, or conduct. State v. Artic , 2010 WI 83, ¶30, 327 Wis. 2d 392, 786 N.W.2d 430. Second, this court reviews whether the consent was freely and voluntarily given. Id. "The question of whether consent was given in fact is a question of historical fact. We uphold a finding of consent in fact if it is not contrary to the great weight and clear preponderance of the evidence." Id.
II. Consent.
¶12 The Fourth Amendment guards against unreasonable searches and seizures. U.S. CONST. amend. IV ; State v. Callaway , 106 Wis. 2d 503, 507, 317 N.W.2d 428 (1982). The State has the burden to prove by clear and convincing evidence that a warrantless search was reasonable under the Fourth Amendment. State v. Kieffer , 217 Wis. 2d 531, 541-42, 577 N.W.2d 352 (1998). Under the Fourth Amendment, warrantless searches are per se unreasonable, subject only to a few specific, carefully drawn exceptions. Callaway , 106 Wis. 2d at 507. A well-established exception to the warrant requirement is when police conduct a search pursuant to freely and voluntarily given consent. State v. Phillips , 218 Wis. 2d 180, 196, 577 N.W.2d 794 (1998). "The test for voluntariness is whether consent to search was given in the absence of duress or coercion, either express or implied." Id. at 197. This court determines whether consent was freely and voluntarily given by evaluating the totality of the circumstances. Id. at 198 ; see also Artic , 327 Wis. 2d 392, ¶33 (listing non-exclusive factors used to determine whether consent was freely and voluntarily given).
¶13 A blood draw is a search within the meaning of the Fourth Amendment. See State v. Tullberg , 2014 WI 134, ¶31, 359 Wis. 2d 421, 857 N.W.2d 120. Upon arresting a person for a violation of WIS. STAT. § 346.63(1), an officer may request that the person provide a blood sample to determine the presence or quantity of alcohol in the blood. WIS. STAT. § 343.305(3)(a). At the time the officer requests the blood sample, the officer must read the standard "Informing the Accused" information to that person. Sec. 343.305(4).
III. Cooper Consented to the Officers' Entry and the Blood Draw.
¶14 I conclude that the circuit court's findings of historical and evidentiary fact amply support the conclusion that Cooper consented to the officers' entry of the house. Although Cooper does not provide authority for the argument that she had to provide separate consent for each officer, I analyze each separately.
¶15 Based on the circuit court's findings of fact, I conclude that the State met its burden to show that the first officer had consent to enter Cooper's house. The circuit court found that Cooper waved to the officer to come into the house. That was sufficient evidence of consent because consent may be given by word, gesture, or conduct. Phillips , 218 Wis. 2d at 197. The fact that the record is not clear as to whether the officer was in uniform makes no difference.[2] Based on the officer's testimony that he was on duty, it is reasonable to infer that he was in uniform. Regardless, after the first officer entered the house, he told Cooper that he was investigating an accident and asked whether she recalled being in an accident. Under those circumstances, any reasonable person would believe that they were speaking to a police officer. Cooper was free to revoke consent at that point but did not do so.
¶16 As to the second officer, the circuit court's findings of fact also support the conclusion that the State met its burden to show that there was consent. Neither party cites to authorities which discuss whether a person must provide separate consent to a second responding officer after granting consent to the first responding officer. Also, it is true that Cooper did not gesture for the second officer to come in as she had done with the first officer. Nevertheless, when the first officer opened the back door for the second officer, Cooper did not protest or object to his entry. Therefore, based on Cooper's conduct, I conclude that she consented to the second officer's entry.[3]
¶17 I also conclude that Cooper's consent was freely and voluntarily given. The record does not contain any evidence that the officers used deception, trickery, or misrepresentation to persuade Cooper to consent. Artic , 327 Wis. 2d 392, ¶33 (listing non-exclusive factors to determine whether consent was given voluntarily). The record also contains no evidence that the officers threatened Cooper. Id. In fact, the circumstances surrounding the consent show that there was no "express or implied duress or coercion." Id. , ¶34. The record shows only that Cooper waved in the first officer, who clearly explained the purpose for the search, and that Cooper failed to object to the second officer, who reasonably entered the house after the first officer opened the back door. Accordingly, I conclude that Cooper freely and voluntarily consented to the officers' entry.[4]
¶18 The circuit court's findings also support the conclusion that the State met its burden to show that there was consent for the blood draw. The officers arrested Cooper for operating a vehicle while under the influence of an intoxicant, WIS. STAT. § 346.63(1)(a), and placed Cooper in the squad car. In the squad car, the officers read Cooper the standard "Informing the Accused" form pursuant to WIS. STAT. § 343.305(4). Again, there is no indication in the record that the officers engaged in trickery, deception, or misrepresentation with regard to the request for a blood draw. There is no evidence in the record showing that Cooper did not understand the "Informing the Accused" information. The circuit court found that Cooper responded to the request for a blood draw affirmatively and without hesitation. Accordingly, I conclude that Cooper freely and voluntarily consented to the blood draw.[5]
¶19 Cooper also argues that she was too intoxicated to freely and voluntarily consent. This argument is not persuasive. The circuit court found that there was no indication that Cooper was too intoxicated to understand what was happening or what the "Informing the Accused" information meant. As with all the other factual findings of the circuit court, that finding is not contrary to the great weight and clear preponderance of the evidence.
CONCLUSION
¶20 For the foregoing reasons, I affirm the judgment of the circuit court.
By the Court. -Judgment affirmed.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)4.

This appeal is decided by one judge pursuant to Wis. Stat. § 752.31(2)(c) (2015-16). All references to the Wisconsin Statutes are to the 2015-16 version unless otherwise noted.

Cooper's brief in this court also argues that the first responding officer did not identify himself as an officer, but Cooper does not cite to any authority that an officer must explicitly and verbally identify himself as such before obtaining consent to search.

Moreover, I note that Cooper's argument is undeveloped in that it is unclear what evidence Cooper wants suppressed as a result of the second officer's entry into the house. Cooper's brief in this court argues that the second officer's entry "was a further encroachment upon [her] Fourth Amendment rights." However, the remedy for a Fourth Amendment violation is the application of the exclusionary rule, see State v. Dearborn , 2010 WI 84, ¶15, 327 Wis. 2d 252, 786 N.W.2d 97, and Cooper's generalized argument fails to identify what evidence was illegally obtained as a result of the second officer's entry.

The State argues that the exigent circumstances and community caretaker exceptions to the warrant requirement justified the officers' warrantless entry into Cooper's home. Because I have concluded that Cooper voluntarily and freely consented to the officers' entry, I do not reach these arguments. Barrows v. American Family Ins. Co. , 2014 WI App 11, ¶9, 352 Wis. 2d 436, 842 N.W.2d 508 ("An appellate court need not address every issue raised by the parties when one issue is dispositive."). Furthermore, the State did not raise these exceptions in the circuit court.
Separately, I note that the State's brief in this court refers to Cooper by her party designation. I remind counsel that briefs must refer to the parties by name rather than by party designation. Wis. Stat. Rule 809.19(1)(i), (3)(a)2.

Cooper's brief in this court also makes generalized arguments about Wisconsin's implied consent law that are rooted in Justice Kelly's concurring opinion in State v. Brar , 2017 WI 73, 376 Wis. 2d 685, 898 N.W.2d 499. Because I have concluded that Cooper voluntarily and freely consented to the blood draw, I do not need to reach these arguments. Barrows , 352 Wis. 2d 436, ¶9.