COURT OF APPEALS
DECISION
DATED AND FILED

November 7, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP1498**

Cir. Ct. No. **2023CV1320**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT IV

PETITIONER,

    PETITIONER-RESPONDENT,

V.

THOMAS JAMES FLYNN, II,

    RESPONDENT-APPELLANT.

        APPEAL from orders of the circuit court for Dane County: RYAN D. NILSESTUEN, Judge. *Reversed and cause remanded with directions*.

        Before Kloppenburg, P.J., Nashold, and Taylor, JJ.

        ¶1    TAYLOR, J.  Thomas James Flynn, II, appeals a circuit court order granting a harassment injunction against him and a later order denying his motion to vacate the injunction.  Flynn argues that the injunction—which was granted after Flynn defaulted by not appearing at the injunction hearing—is void because

he was not properly served before the court issued the injunction. We conclude that the court erroneously exercised its discretion in denying Flynn's motion to vacate the injunction pursuant to WIS. STAT. § 806.07(1)(d) (2021-22).[1] Because Flynn was not properly served before the court issued the injunction, the court lacked personal jurisdiction over him, and the injunction is void. Therefore, we reverse and remand to the circuit court with directions to vacate the injunction.

## BACKGROUND

¶2 There is no dispute as to the following material facts.

¶3 On May 25, 2023, proceeding pro se, Petitioner filed a petition for a temporary restraining order ("TRO") and a harassment injunction ("the injunction") against Flynn. The petition alleged the following. After Petitioner ended her romantic relationship with Flynn, and despite Petitioner's request for Flynn to stop contacting her, Flynn continued to contact her repeatedly by cell phone, text, social media messages, and first-class mail. After Petitioner blocked Flynn's phone number and his social media accounts, Flynn continued to contact her from different "fake" phone numbers and social media accounts. On one occasion, Flynn said in a Facebook message that he was coming to Petitioner's residence. On another occasion, a person Petitioner believed to be Flynn texted her that he was suicidal and was checking himself into a treatment facility. Based

---

[1] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

on these allegations, the circuit court commissioner issued a TRO against Flynn on May 25, 2023, and set a hearing on the petition for an injunction for June 2, 2023.[2]

¶4    On the same day that the TRO was issued, Petitioner provided Flynn's Chicago, Illinois, address to the Dane County Sheriff's Office for the purpose of serving Flynn with the TRO, notice of the injunction hearing, and injunction petition.

¶5    Flynn did not appear at the June 2 injunction hearing. The circuit court found that there was no proof of service in the record. The court determined that Petitioner had exercised "due diligence" in forwarding the TRO, notice of the injunction hearing, and injunction petition to the Dane County Sheriff's Office for service. Pursuant to WIS. STAT. § 813.125(3)(c), the court granted a fourteen-day extension to allow Petitioner additional time to serve Flynn. The injunction hearing was continued until June 16.

¶6    On June 2—the same day that the fourteen-day extension was granted—Petitioner took steps to serve Flynn by three methods. First, Petitioner provided Flynn's description and address to the Cook County Sheriff's Office in Chicago, Illinois. Around 5:30 p.m. on June 6, a Cook County deputy sheriff attempted to personally serve Flynn but was unable to make contact. The deputy sheriff provided an affidavit stating: "Rang bell, knocked, no answer."[3] Second,

---

[2] As discussed in more detail below, WIS. STAT. § 813.125(3)(b) authorizes the circuit court judge or commissioner to issue a temporary restraining order without notice to the respondent, here Flynn.

[3] The affidavit of attempted service by the Cook County deputy sheriff was not filed in the circuit court record until July 3, eighteen days after the injunction was issued by the court. The record does not contain any explanation for the delay in filing this affidavit until after the injunction was issued.

Petitioner sent to Flynn by first-class mail the TRO, notice of the injunction hearing, and injunction petition. Third, Petitioner requested publication of the notice of the TRO, injunction hearing date, and a summary of the injunction petition in the Chicago Daily Law Bulletin, which was published on June 6.

¶7 Flynn did not appear at the June 16 injunction hearing. The circuit court determined that Flynn was "properly noticed" and had not given a "reason for his nonappearance." The standard, preprinted findings included in the court's injunction state that "[t]he respondent has been properly served and had an opportunity to be heard" and that the court had "personal and subject matter jurisdiction." Based on Petitioner's proof of publication of the notice of hearing, her testimony under oath that the allegations in the injunction petition are true and correct, and Flynn's nonappearance after what the court deemed "proper service," the court found Flynn in default and granted the injunction for four years. The injunction order was mailed to Flynn.

¶8 On June 22, proceeding pro se, Flynn filed a motion for "reconsideration" requesting that the circuit court "vacate" the default judgment. Flynn argued, in relevant part, that he had not been properly served before the injunction was issued. On August 3, the circuit court held a hearing on Flynn's motion. At the hearing, Flynn testified that he had been at work when the Cook County deputy sheriff attempted to serve him on June 6. Flynn acknowledged that he had received the "request for a restraining order" in the mail, but he argued that he was not properly served by publication because there was only one attempt at personal service. The court, construing the motion as a motion for relief from the

injunction pursuant to WIS. STAT. § 806.07(1), denied the motion.[4]  The court concluded that "proper notice was given in terms of publication," and that "none of the bases for granting relief under [§] 806.07 … have been met."  Flynn appeals.

## DISCUSSION

¶9      Flynn argues that the circuit court erroneously exercised its discretion in denying his motion for relief from the injunction because he was not properly served before the injunction was issued.  For the following reasons, we agree.

### I.  Standard of Review and Governing Legal Principles

¶10     The decision to grant or deny a motion for relief from a default judgment pursuant to WIS. STAT. § 806.07(1) is within the circuit court's discretion.  *Haselow v. Gauthier*, 212 Wis. 2d 580, 587, 569 N.W.2d 97 (Ct. App. 1997).  We will uphold a discretionary decision of the circuit court if it has "examined the relevant facts, applied a proper standard of law, and, using a demonstrated rational process, reached a conclusion that a reasonable judge could reach." *Id.* at 591 (citation omitted).

¶11     One of the grounds under WIS. STAT. § 806.07(1) for relief from an order is if "[t]he [order] is void."  Sec. 806.07(1)(d).[5]  An order is "void" if it was

---

[4]  On appeal, the parties do not dispute that the court properly construed the motion.

[5]  WISCONSIN STAT. § 806.07 states, in relevant part:  "(1) On motion and upon such terms as are just, the court … may relieve a party or legal representative from a judgment, order or stipulation for the following reasons: ….  (d)  The judgment is void…."

obtained without proper service of the action. ***Haselow***, 212 Wis. 2d at 586-87. Proper service of process is necessary in a legal action because it grants a circuit court personal jurisdiction over a defendant, an indispensable requirement "grounded in constitutional requirements of due process." ***Id.*** at 586.

¶12 The party arguing that the circuit court erroneously exercised its discretion in granting or denying a motion to vacate a default judgment has the burden of proof. ***Richards v. First Union Sec., Inc.***, 2006 WI 55, ¶27, 290 Wis. 2d 620, 714 N.W.2d 913. This means that, in the present case, Flynn has the burden of showing that he was not properly served before the injunction was issued based on his default.

¶13 Here, there is no dispute as to the underlying facts regarding Petitioner's attempts to serve Flynn. As a result, we must determine whether the undisputed facts are sufficient to satisfy the legal standards for proper service, which presents a question of law that we review independently. *See **Loppnow v. Bielik***, 2010 WI App 66, ¶9, 324 Wis. 2d 803, 783 N.W.2d 450 ("Where … the underlying facts regarding diligence in service of process are undisputed, the legal significance of such attempts is a question of law to be addressed independently by the reviewing court."). If the circuit court applied an incorrect legal standard in denying Flynn's motion to vacate the injunction, we will conclude that the court erroneously exercised its discretion. *See **Paige K.B. v. Steven G.B.***, 226 Wis. 2d 210, 225, 594 N.W.2d 370 (1999) ("If the circuit court decision involves a question of law, 'we review the question of law de novo and reverse if the exercise of discretion is based on an error of law.'" (citation omitted)).

¶14 To determine whether the circuit court applied the correct legal standard, we must interpret the statutes governing service of process in harassment

injunction actions. *See **Richards***, 290 Wis. 2d 620, ¶12. Statutory interpretation "begins with the language of the statute." ***State ex rel. Kalal v. Circuit Ct. for Dane Cnty.***, 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110 (citation omitted). We give statutory language "its common, ordinary, and accepted meaning." ***Id.*** "If this process of analysis yields a plain, clear statutory meaning, then there is no ambiguity, and the statute is applied according to this ascertainment of its meaning." ***Id.***, ¶46 (citation omitted).

## II. Flynn Was Not Properly Served

¶15 On appeal, the parties agree that, in considering whether the circuit court erroneously exercised its discretion in denying Flynn's motion to vacate the injunction, the dispositive issue is whether Flynn was properly served by publication.[6] According to Flynn, service by publication was improper because he was not concealing himself or otherwise avoiding service and because there was no "due diligence" made to serve him personally. We understand Flynn to be arguing that the court erred as a matter of law in denying his motion to vacate the injunction because the injunction is void for lack of proper service. For her part,

---

[6] Flynn also argues that the injunction should be vacated because the circuit court erroneously determined that he engaged in "harassment" for the purposes of WIS. STAT. § 813.125 and because he should be relieved of the injunction due to "surprise" under WIS. STAT. § 806.07(1)(a). Because our conclusion that the injunction is void for improper service is dispositive, we do not address these other arguments. *See **Barrows v. American Fam. Ins. Co.***, 2014 WI App 11, ¶9, 352 Wis. 2d 436, 842 N.W.2d 508 (2013) ("An appellate court need not address every issue raised by the parties when one issue is dispositive.").

Flynn additionally argues that the publication of Petitioner's TRO, summary of petition for a harassment injunction, and notice of the hearing was improper because it occurred before the Cook County deputy sheriff attempted personal service. Because our conclusion with respect to "reasonable diligence" is dispositive, we do not address whether Petitioner should have attempted personal service before service by publication. *See **id.***

Petitioner argues that service by publication was proper because she exercised "reasonable diligence" in attempting to personally serve Flynn.

¶16    For the following reasons, we conclude that service by publication was not proper here because the circuit court did not make one of the two alternative findings required for service by publication:  (1) that personal service under Wɪꜱ. Sᴛᴀᴛ. § 801.11(1)(a) or (b) was unsuccessful because Flynn was "avoiding service by concealment or otherwise" as required by Wɪꜱ. Sᴛᴀᴛ. § 813.125(2)(a); or (2) that Petitioner exercised "reasonable diligence" in attempting to personally serve Flynn under § 801.11(1)(a) or (b) as required by § 813.125(3)(d).  More specifically, there were no allegations made or evidence presented to the circuit court that Flynn was "avoiding service by concealment or otherwise" and, as a matter of law based on the facts of this case, Petitioner did not exercise "reasonable diligence" in attempting to personally serve Flynn. Accordingly, we conclude that the injunction is void for lack of proper service and, therefore, that the circuit court erroneously exercised its discretion in denying Flynn's motion to vacate the injunction.

## A.  Service in Harassment Injunction Actions

¶17    We begin by providing some background about the harassment injunction process, as set forth under Wɪꜱ. Sᴛᴀᴛ. § 813.125.  As pertinent here, an action for a TRO and harassment injunction "may be commenced by filing a petition described under sub. (5)(a)." Sec. 813.125(2)(a).[7]  When a petitioner files

---

[7] Wɪꜱᴄᴏɴꜱɪɴ Sᴛᴀᴛ. § 813.125(5)(a) provides:

    (a)  The petition shall allege facts sufficient to show the following:

(continued)

the petition, the circuit court or commissioner may issue a TRO without giving notice to the respondent if the court finds "reasonable grounds to believe that the respondent has engaged in harassment with intent to harass or intimidate the petitioner." Sec. 813.125(3)(a)2., (b). If the court issues a TRO, it must hold a hearing on the issuance of an injunction within 14 days after the TRO was issued. Sec. 813.125(3)(c).

¶18 Prior to the injunction hearing, the petitioner must serve the respondent with the TRO, a notice of the injunction hearing, and the injunction petition. *See* WIS. STAT. § 813.125(4)(a)2. (a harassment injunction may be granted if, among other requirements, the petitioner serves upon the respondent a copy of the TRO and notice of the injunction hearing); § 813.125(2)(a) (requiring "service of the petition upon the respondent"). The requirements for serving these items on the respondent are governed by WIS. STAT. § 801.11. *See* WIS. STAT.

---

1. The name of the person who is the alleged victim.

2. The name of the respondent.

3. That the respondent has engaged in harassment with intent to harass or intimidate the petitioner.

4. If the petitioner knows of any other court proceeding in which the petitioner is a person affected by a court order or judgment that includes provisions regarding contact with the respondent, any of the following that are known by the petitioner:

a. The name or type of the court proceeding.

b. The date of the court proceeding.

c. The type of provisions regarding contact between the petitioner and respondent.

§ 801.05(11m)(a) (in actions under § 813.125, the court "has jurisdiction over a person served … pursuant to [§] 801.11.").

¶19 Under WIS. STAT. § 801.11(1), the plaintiff must first attempt to "personally serv[e] the [petition] upon the [respondent] either within or without this state." Sec. 801.11(1)(a).[8] If with "reasonable diligence" the respondent

---

[8] WISCONSIN STAT. § 801.11(1) provides, in relevant part:

> A court of this state having jurisdiction of the subject matter and grounds for personal jurisdiction as provided in [WIS. STAT. §] 801.05 may exercise personal jurisdiction over a defendant by service of a summons as follows:
>
> (1) NATURAL PERSON. Except as provided in sub. (2) upon a natural person:
>
> (a) By personally serving the summons upon the defendant either within or without this state.
>
> (b) If with reasonable diligence the defendant cannot be served under par. (a), then by leaving a copy of the summons at the defendant's usual place of abode:
>
> 1. In the presence of some competent member of the family at least 14 years of age, who shall be informed of the contents thereof;
>
> 1m. In the presence of a competent adult, currently residing in the abode of the defendant, who shall be informed of the contents of the summons; or
>
> 2. Pursuant to the law for the substituted service of summons or like process upon defendants in actions brought in courts of general jurisdiction of the state in which service is made.

(continued)

cannot be served personally, the petitioner may leave a copy of the petition at the respondent's "usual place of abode" in the presence of a competent family member or adult household member who shall be informed of the contents of the petition. Sec. 801.11(1)(b)1., 1m.; *see also* **Welty v. Heggy**, 124 Wis. 2d 318, 323, 369 N.W.2d 763 (Ct. App. 1985) ("The plain meaning of [§] 801.11(1) requires service under subsection (1)(a) to be attempted with reasonable diligence before an alternative method of service is employed."). If with "reasonable diligence" the respondent cannot be served using the methods set forth in § 801.11(1)(a) or (b), service may be made by publication. Sec. 801.11(1)(c).

¶20     In a harassment injunction action, the circuit court or commissioner must advise the petitioner "of the right to serve the respondent the petition by published notice if with "due diligence" the respondent cannot be served as provided under [WIS. STAT. §] 801.11(1)(a) or (b)." WIS. STAT. § 813.125(3)(d). Wisconsin courts have treated the term "due diligence" synonymously with the term "reasonable diligence," *see* **West v. West**, 82 Wis. 2d 158, 167, 262 N.W.2d 87 (1978), and we use the term "reasonable diligence" for the purposes of our discussion.

¶21     In the event that the petitioner has not served the respondent prior to the injunction hearing despite exercising "due diligence" in attempting to do so,

---

(c) If with reasonable diligence the defendant cannot be served under par. (a) or (b), service may be made by publication of the summons as a class 3 notice, under ch. 985, and by mailing. If the defendant's post-office address is known or can with reasonable diligence be ascertained, there shall be mailed to the defendant, at or immediately prior to the first publication, a copy of the summons and a copy of the complaint. The mailing may be omitted if the post-office address cannot be ascertained with reasonable diligence.

the circuit court or commissioner may continue the injunction hearing on a one-time basis and extend the TRO for fourteen days. WIS. STAT. § 813.125(3)(c). After the court grants this extension, the petitioner may continue to attempt service under WIS. STAT. § 801.11(1). In the alternative, the petitioner may file an affidavit with the court stating that "personal service by the sheriff or a private server under [§] 801.11(1)(a) or (b) was unsuccessful because the respondent is avoiding service by concealment or otherwise," and the court "shall inform the petitioner that he or she may serve the respondent by publication" and by mail. Sec. 813.125(2)(a).[9]

## B. Service by Publication Under WIS. STAT. § 813.125(2)(a)

¶22 On appeal, Flynn argues that service by publication under WIS. STAT. § 813.125(2)(a) was not proper because he was not avoiding service. Petitioner does not dispute Flynn's assertion that he was not avoiding service or develop any argument about § 813.125(2)(a) in her response brief.[10] Moreover, nothing in the circuit court record indicates that Petitioner filed an affidavit prior

---

[9] WISCONSIN STAT. § 813.125(2)(a) states, in pertinent part:

> If the judge or a circuit court commissioner extends the time for a hearing under sub. (3)(c), and the petitioner files an affidavit with the court stating that personal service by the sheriff or a private server under [WIS. STAT. §] 801.11(1)(a) or (b) was unsuccessful because the respondent is avoiding service by concealment or otherwise, the judge or circuit court commissioner shall inform the petitioner that he or she may serve the respondent by publication of a summary of the petition as a class 1 notice, under [WIS. STAT.] ch. 985, and by mailing … if the respondent's post-office address … is known or can with due diligence be ascertained.

[10] For example, Petitioner does not argue that the avenue for service by publication under WIS. STAT. § 813.125(2)(a) applies outside of the context of a respondent avoiding service.

12

to the issuance of the injunction averring that "personal service by the sheriff or a private server under [WIS. STAT. §] 801.11(1)(a) or (b) was unsuccessful because the respondent is avoiding service by concealment or otherwise." Sec. 813.125(2)(a). By failing to respond to Flynn's arguments on appeal regarding § 813.125(2)(a), Petitioner concedes that service by publication was not authorized under § 813.125(2)(a). *See* ***State v. Bauer***, 2010 WI App 93, ¶11, 327 Wis. 2d 765, 787 N.W.2d 412.

¶23    The remaining focus of our inquiry, and the primary focus of both parties in this appeal, is whether Petitioner exercised reasonable diligence as required in WIS. STAT. § 801.11(1)(a) or (b) before accomplishing service by publication.

### C. Service by Publication Under WIS. STAT. § 801.11(1)

¶24    As mentioned above, the issue here is whether Petitioner properly served Flynn by publication. The first step that must be attempted prior to service by publication under WIS. STAT. § 801.11(1) is for a petitioner to exercise "reasonable diligence" in attempting to personally serve a respondent. Sec. 801.11(1)(a). The determination of whether a petitioner has exercised reasonable diligence to personally serve a respondent is "a question of what is reasonable under the facts of a particular case." ***Culver v. Kaza***, 2021 WI App 57, ¶29, 399 Wis. 2d 131, 963 N.W.2d 865. This court has described reasonable diligence as "that which is reasonable under the circumstances and not all possible diligence which may be conceived." ***Loppnow***, 324 Wis. 2d 803, ¶10 (citation omitted). It requires "the pursuit of any 'leads or information reasonably calculated to make personal service possible.'" ***Id.*** (citation omitted). It does not include "diligence which stops just short of the place where if it were continued

might reasonably be expected to uncover an address … of the person on whom service is sought." *Id.* (citation omitted).

¶25   "Because there are no hard and fast standards as to what facts fulfill the requirements of 'reasonable diligence' under [WIS. STAT.] § 801.11(1)," our determination is guided by case law. *Id.*, ¶11. We deem instructive Wisconsin case law in which this court and our supreme court ruled that one attempt at personal service before resorting to an alternative method of service did not constitute reasonable diligence. For example, in *Beneficial Finance Co.*, a process server went to the defendant's address and was told by the defendant's wife that he was not home. *Beneficial Fin. Co. of Wis. v. Lee*, 37 Wis. 2d 263, 268, 155 N.W.2d 153 (1967). The process server then left the summons with the defendant's wife. *Id.* Our supreme court concluded that this single attempt at personal service did not satisfy the reasonable diligence requirement. *Id.* at 268-69. Similarly, in *Haselow*, a process server went to the defendant's address and was told by the defendant's father that he was currently in Hawaii. *Haselow*, 212 Wis. 2d at 584. The plaintiff then resorted to service by mailing and publication. *Id.* This court concluded that the plaintiff's "single inquiry" about the defendant's whereabouts before resorting to service by publication was not reasonable diligence and that the plaintiff "was required to reasonably follow up to attempt service." *Id.* at 589. In *West*, the plaintiff gave the defendant's last known address to the sheriff for service, and the sheriff provided an affidavit stating that he was "unable with due diligence … to find the defendant." *West*, 82 Wis. 2d at 161. The plaintiff then served the defendant by publication. *Id.* at 162. Our supreme court concluded that it was not reasonable diligence when "the only effort to effect service was to give to the sheriff the defendant's last known

address" and that the plaintiff could have contacted the defendant's family members to ascertain her whereabouts. *Id.* at 166-67.

¶26    Guided by this case law, we conclude that Petitioner's efforts to personally serve Flynn fell short of reasonable diligence. Petitioner first attempted to serve Flynn on May 25 by providing his Chicago address to the Dane County Sheriff's Office. There is no indication that the Dane County Sheriff's Office attempted personal service. On June 2, after Petitioner obtained a 14-day continuance of the injunction hearing to effectuate service, she provided Flynn's address to the Cook County Sheriff's Office. A deputy sheriff made one attempt to personally serve Flynn on June 6 but was unable to make contact. This was the end of Petitioner's attempts at personal service prior to the injunction hearing.[11] At this point, Petitioner had not exhausted all "leads or information reasonably calculated to make personal service possible." *See Loppnow*, 324 Wis. 2d 803, ¶10 (citation omitted). Petitioner had Flynn's correct address and, after the first attempt at service, there were still nine days before the June 16 injunction hearing. Under these circumstances, it would have been reasonable for Petitioner to make at least another attempt to personally serve Flynn prior to the hearing. Accordingly, we conclude as a matter of law that Petitioner did not exercise reasonable diligence in attempting to personally serve Flynn under the factual circumstances present here.

¶27    Our conclusion is also consistent with *Beneficial Finance Co.*, *Haselow*, and *West*, as discussed above. These cases support our conclusion that,

---

[11] The Cook County Sheriff's Office attempted personal service on Flynn again on June 17, 2023, one day after the injunction hearing. Because this attempt at service occurred after the injunction had been issued, we do not consider it in our reasonable diligence analysis.

under the facts of this case, reasonable diligence required more than Petitioner's single attempt to personally serve Flynn before resorting to alternate methods of service. *See Haselow*, 212 Wis. 2d at 589. In fact, requiring Petitioner to attempt personal service again would require even less effort than what was required in those cases because Petitioner had Flynn's correct address and sufficient time to make another attempt at personal service. Petitioner did not need to perform additional searching or sleuthing in order to obtain Flynn's correct address.

¶28 Petitioner points to this court's decision in *Culver* to support her argument that her single attempt at personal service was reasonable diligence. In *Culver*, a process server attempted to serve a defendant who lived in a gated community. *Culver*, 399 Wis. 2d 131, ¶3. The affidavit of the process server averred the following. When the security guard for the gated community called the defendant regarding the presence of the process server, the defendant instructed the security guard to deny entry. *Id.* The process server left the documents with the security guard, who said that the documents would be delivered to the defendant's residence. *Id.* The process server also sent copies of the documents to the defendant by certified mail. *Id.*, ¶4. This court concluded that this single attempt at personal service was reasonable diligence because process servers are not required to "trespass or otherwise force entry" or "engage in what would reasonably appear at the time to be fruitless attempts." *Id.*, ¶33. We agree with Petitioner that, in some factual scenarios such as that presented in *Culver*, one attempt at personal service could constitute reasonable diligence. However, we disagree with Petitioner that the present case is analogous to *Culver*. Unlike the facts of *Culver*, there is no indication here that Flynn refused personal service, that personal service of Flynn would require trespass or forced entry, or

16

that future attempts at service would be unsuccessful. *Culver* is therefore factually distinguishable from the facts here.

¶29    Petitioner also argues that her single attempt at personal service was reasonable because she had limited time to serve Flynn. We acknowledge that harassment injunction actions and other types of injunction actions under WIS. STAT. ch. 813 are subject to an expedited statutory process because of the underlying nature of the conduct alleged. And we recognize that the deadline for holding an injunction hearing may constrain the time for a petitioner attempting personal service. As a result, we agree that the shortened timeline for service in these types of injunction actions is a fact that is relevant to the reasonable diligence inquiry. However, given the circumstances here, Petitioner has failed to show that there was insufficient time for at least one other attempt at personal service under WIS. STAT. § 801.11(1)(a) before resorting to an alternate method of service. Therefore, the limited time for service under WIS. STAT. § 813.125 does not alter our conclusion that, under the facts of this case, Petitioner failed to exercise reasonable diligence in attempting personal service.

¶30    Petitioner also argues that her single attempt at personal service was reasonable because she was proceeding pro se. We acknowledge that many petitioners and respondents proceed pro se in harassment and other similar injunction actions and that courts may give pro se litigants some leniency. However, pro se litigants are bound by the same procedural requirements as litigants who are represented by counsel. *See **Waushara County v. Graf***, 166 Wis. 2d 442, 452, 480 N.W.2d 16 (1992). Here, Petitioner's pro se status does not exempt her from the requirement to exercise reasonable diligence in attempting personal service, necessary to confer personal jurisdiction over a respondent. Our decision to hold Petitioner to the same procedural requirements as other litigants is

also supported by the fact that Petitioner had notice that she was required to do more than give Flynn's information to the sheriff. Specifically, the petition form that Petitioner filled out contained a section titled "Service on Respondent" that stated: "Before the Injunction Hearing, it is the petitioner's responsibility to contact the sheriff's office or other process server to verify that the documents were served."

¶31 Further, Petitioner suggests that the one attempt to personally serve Flynn was reasonable because Flynn admitted that he received notice of the injunction hearing by mail. This argument fails because Flynn's actual notice of the injunction hearing does not satisfy the statutory service requirements needed to confer personal jurisdiction. *See **Johnson v. Cintas Corp. No. 2***, 2012 WI 31, ¶25, 339 Wis. 2d 493, 811 N.W.2d 756 ("[A] defendant's actual notice of an action is not alone enough to confer personal jurisdiction upon the court; rather, '[s]ervice must be made in accordance with the manner prescribed by statute.'" (citation omitted)). Because reasonable diligence was not exercised in attempting to personally serve Flynn, service by publication was not proper under WIS. STAT. § 801.11(1).

¶32 In sum, we conclude that the injunction issued against Flynn is void under WIS. STAT. § 806.07(1)(d) as a matter of law because Flynn was not properly served by publication. Therefore, the circuit court had no personal jurisdiction over Flynn. Accordingly, we reverse the court's harassment

injunction order and remand with directions to vacate the harassment injunction order without prejudice.[12]

## CONCLUSION

¶33     For the foregoing reasons, we reverse and remand with directions to vacate the order of the circuit court without prejudice.

*By the Court*.—Orders reversed and cause remanded with directions.

Not recommended for publication in the official reports.

---

[12] Flynn does not dispute that Petitioner may refile her petition for a TRO and harassment injunction upon this injunction being vacated by the circuit court.